Charles KVERAGAS, et ux.,
Plaintiffs-Appellants,

v.

SCOTTISH INNS, INC., et al.,
Defendants-Appellees.

No. 83–5197.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 15, 1984.

Decided May 2, 1984.

---

See also D.C., 96 F.R.D. 425.

W. Zane Daniel, Steven Oberman, Knoxville, Tenn., Laurence M. Kelly, argued, Montrose, Pa., for plaintiffs-appellants.

Robert A. Crawford, argued, Knoxville, Tenn., for defendants-appellees.

Before MERRITT and JONES, Circuit Judges, and TAYLOR, District Judge.[*]

[*] The Honorable Anna Diggs Taylor, United States District Court for the Eastern District of Michigan, sitting by designation.

MERRITT, Circuit Judge.

On February 16, 1982, three intruders kicked open the door to a guest room in a Scottish Inns motel in Knoxville, Tennessee, occupied by Charles and Esther Kveragas, plaintiffs below. Charles Kveragas was shot, Esther Kveragas was injured, and both were robbed of approximately three thousand dollars. The couple subsequently filed a diversity action against the actual and apparent owners and operators of the motel, alleging that their injuries were proximately caused by the failure of the owners and operators of the motel to make adequate provisions for the safety of motel guests. At the close of plaintiffs' case, the District Court directed a verdict for the defendants on the grounds that the defendants had no duty to protect the guests and that the sudden criminal acts of the assailants were the sole proximate cause of plaintiffs' injuries. *Kveragas v. Scottish Inns, Inc.*, 565 F.Supp. 258 (E.D. Tenn.1983). We reverse and remand for a new trial.

## I.

The evidence presented at trial showed that the plaintiffs registered as guests at a Scottish Inns motel located in Knoxville on February 16, 1982. Their room was equipped with a hollow core door that fit poorly into the door frame. The only door lock was that incorporated into the handle, described as a grade three lock, although a security chain was provided. After the plaintiffs entered the room, they dutifully locked the door and secured the chain.

At approximately 10:10 P.M., three intruders broke down the door and burst into the room. The evidence showed a single footprint on the door, strongly suggesting that a single kick was the only force applied to the door. One intruder accosted Mrs. Kveragas, who was taking a bath, while another shot Mr. Kveragas, gravely wounding him. The attackers took three thousand dollars in cash and escaped.

The evidence further showed that deadbolt locks and other security devices were easily available and in use throughout the motel industry. Deadbolt locks are considerably stronger than the type of lock employed at this motel, and the evidence was sufficient to support a finding that a deadbolt lock could withstand the force which was applied to the plaintiffs' door.

## II.

The District Court directed a verdict for the defendants based on its application of the standard announced by the Tennessee Supreme Court in *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975). *Cornpropst* involved an action against the owners and operators of a shopping center by a female shopper who was assaulted in the shopping center's parking lot. Affirming the defendants' motion to dismiss in that case, the Tennessee Supreme Court stated that

> [t]here is no duty upon the owners or operators of a shopping center, individually or collectively, or upon merchants and shopkeepers generally, whose mode of operation of their premises does not attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises.

528 S.W.2d at 198.

Applying this standard to the facts of this case, the District Court concluded that plaintiffs "as a matter of law, failed to show that defendants had knowledge of or reason to know that acts were occurring or about to occur at the motel that posed an imminent probability of harm to motel guests." Memorandum Opinion at 259. Alternatively, the District Court held that "the sudden criminal acts of the assailants were the sole proximate legal cause of plaintiffs' injuries." *Id.*

We believe the District Court erred in applying the *Cornpropst* standard to this case. Although the majority opinion in *Cornpropst* is wide-ranging, the holding is

expressly limited by the following language:

> We are not called upon, in this case, to draft a rule applicable to all of the many types of business and entertainment and service establishments or of every premises liability, or special relationship situation wherein a duty of protection of invitees might be asserted, and we do not propose to do so.

528 S.W.2d at 198. *Cornpropst*, by its own terms, addresses only the liability of shopping center owners and operators and other shopkeepers; the innkeeper-registered guest relationship is the type of "special relationship situation" which the *Cornpropst* court expressly refused to address.[1] Thus, our responsibility is to survey other indicia of state law to determine what rule the Tennessee Supreme Court would apply to this case.

### A.

The common law has long recognized the special legal relationship between innkeepers and registered guests. Historically, innkeepers operated under an extreme standard of liability, approaching that of an insurer against all dangers save acts of God. *See, e.g., Dickson v. Waldon*, 135 Ind. 507, 34 N.E. 506 (1893); *McFadden v. Bancroft Hotel Corp.*, 313 Mass. 56, 46 N.E.2d 573 (1943); *Gurren v. Casperson*, 147 Wash. 257, 265 P. 472 (1928). The Supreme Court of New York long ago offered an explanation for the emergence of the innkeeper's special responsibility:

> This rigorous rule had its origin in the feudal conditions which were the outgrowth of the Middle Ages. In those days there was little safety outside of castles and fortified towns for the wayfaring traveler, who, exposed on his journey to the depredations of bandits and brigands, had little protection when he sought at night temporary refuge at the wayside inns, established and conducted for his entertainment and convenience. Exposed as he was to robbery and violence, he was compelled to repose confidence, when stopping on his pilgrimages over night, in landlords who were not exempt from temptation; and hence there grew up the salutary principles that a host owed to his guest the duty, not only of hospitality, but also of protection.

*Crapo v. Rockwell*, 48 Misc.Rep. 1, 94 N.Y. Supp. 1122 (1905).

Although castles and fortified towns are no longer part of our landscape, bandits and brigands remain. The common law has responded to these cultural changes by lessening, but not removing, the innkeeper's liability for criminal acts committed by third parties. See Anno., *Liability of Innkeeper, Restaurateur, or Tavern Keeper for Injury Occurring on or about Premises to Guest or Patron by Person other than Proprietor or his Servant,* 70 A.L.R.2d 628; Note, *Landlord's Duty to Protect Tenants From Criminal Acts of Third Parties: The View from 1500 Massachusetts Avenue,* 59 Georgetown L.J. 1153 (1971). We predict that the Supreme Court of Tennessee would neither adhere to the ancient rule of virtual strict liability nor entirely abrogate the innkeeper's duty save in cases of imminent harm. Rather, we predict the Tennessee Supreme Court would adopt the rule announced by a panel of the Tennessee Court of Appeals in

---

1. The *Cornpropst* opinion recognizes the special status of innkeepers. The opinion contains the following passage from Prosser, *Law of Torts* 4th Ed. at 339:

> Liability for nonfeasance was [ ] slow to receive recognition in the law. It first appears in the case of those engaged in "public" callings, who, by holding themselves out to the public, were regarded as having undertaken a duty to give service, for the breach of which they were liable. This idea still survives in the obligation of common carriers, *innkeepers,* public warehousemen, and public utilities to serve all comers.

528 S.W.2d at 192 (emphasis added). In its survey of the general development of the common law, the opinion states that "[t]he cases involving liability for the criminal acts of third persons are most numerous involving the *innkeeper guest relationship* and the patron public amusement owners and operators." 528 S.W.2d at 193 (emphasis added).

*Zang v. Leonard,* 643 S.W.2d 657 (Tenn. App.1982).[2]

The plaintiff in *Zang* was shot by a robber in the parking lot of a motel in which the plaintiff was then residing. The theory of plaintiff's suit was that the motel was negligent in failing to make adequate provision for his safety in the parking lot. The *Zang* court concluded that *Cornpropst* did not apply, for the same reasons that we do not believe it applies to the case *sub judice.* *See* 643 S.W.2d at 662. The *Zang* court next rejected the rule set out in Restatement, Second, Torts § 344 because that rule can be interpreted to impose liability in the absence of fault on the part of the innkeeper.[3]

▇ The *Zang* court then set out the standard of care which we believe the Tennessee Supreme Court would apply in cases such as the instant one: the duty placed on innkeepers to protect registered guests from the misconduct of third persons is a duty of due care under all the circumstances. 643 S.W.2d at 663. Put differently, the "reasonable person" standard, the cornerstone of common law tort jurisprudence, is the standard that applies to innkeepers in the protection of their guests, just as it governs countless other relationships.

The *Zang* court did not leave the application of the general due care standard to the unfettered discretion of the jury, and neither do we. The *Zang* court addressed the factors which a jury should consider in assessing due care:

> The measure of the liability of the possessor of land to invitees is due care under all the circumstances including the nature and use of the land, the nature of the invitation, the nature of the relationship with the invitee, the opportunity of the possessor and the invitee to know and avoid existing or probable dangers, and any and all other factors which would challenge the attention of the possessor and/or invitee to the probability of danger to the invitee and produce the precautions which a reasonably prudent person would instigate under the same or similar circumstances.

643 S.W.2d at 663.

▇ Under the *Zang* rule, the first responsibility of the factfinder is to determine "what, if any, protective measures would have been employed by a reasonably prudent motel operator under the same circumstances" which the factfinder finds existed at the time of the injury. *Id.* The finding of fact as to the protective measures which a reasonably prudent motel operator would have employed is to be based on a comprehensive study of *all* relevant conditions. The *Zang* court listed some of

---

**2.** "In the absence of more convincing evidence of what the state law is," a federal court should apply the law as declared by an intermediate state court. *Fidelity Trust Co. v. Field,* 311 U.S. 169, 177–78, 61 S.Ct. 176, 177–78, 85 L.Ed. 109 (1940); *Woodruff v. Tomlin,* 616 F.2d 924, 928–29 (6th Cir.1980).

**3.** Restatement, Second, Torts § 344 provides:
> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The *Zang* court apparently read this section in the disjunctive: liability attaches *either* for phys-

ical harm caused by the acts of third persons regardless of the care exercised by the possessor *or* for physical harm caused by the possessor's failure to exercise reasonable care to discover danger or give a warning. Under this interpretation, possessors of land would indeed approach the status of insurers. We are not convinced this is the appropriate interpretation of this section, however. Comment (d) to this section states that a possessor of land "is not an insurer of the safety of [ ] visitors against the acts of third persons, or the acts of animals. He is, however, under a duty to exercise reasonable care to give them protection." Comment (f) states that "[s]ince the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know the acts of the third person are occurring, or are about to occur." This formulation sounds strikingly like the *Cornpropst* rule.

the appropriate considerations: whether the motel is advertised as an unusual establishment which offers better than ordinary facilities; whether the location of the motel is such as to be convenient to criminals; and whether prior assaults or other criminal acts have occurred on the premises. *Id.* This list is not exhaustive. The factfinder may also consider the cost of various protective measures weighed against the expected benefits of those measures; the ability of the guest to protect himself by employing available and relatively inexpensive protective measures such as deadbolt locks and other devices; compliance with the industry standard, if such a standard exists and is found to be reasonable; compliance with internal safety procedures if such procedures exist; the inconvenience to guests occasioned by particular protective measures; and any other factor or circumstance which the trial court determines, in light of the particular facts of each case, is relevant to the ultimate fact question regarding reasonable protective measures.

■ Once the factfinder determines what, if any, protective measures would have been employed by a reasonably prudent motel operator under the same circumstances, the fact-finder next should determine "whether the actions of the responsible defendants conform to the actions of a reasonably prudent motel operator" as found by the factfinder. *Id.* If the factfinder determines that the responsible defendants did not comply with this standard of care, then it should find the defendants negligent; otherwise, it should find them not negligent. *Id.*

■ In sum, we accept the *Zang* court's conclusion that the general rule in Tennessee is *not* that "the possessor of premises must have actual notice of a threatened specific act by a specific person before liability can attach to the possessor for the criminal act of a third person." 643 S.W.2d at 664. That rule, the *Cornpropst* rule, is an exception that applies to commercial facilities, such as shopping centers, which

invite and attract people to enter an open area and mix indiscriminately with other people. A traveler enters his hotel room with a different expectation of security than that with which he enters a shopping mall. Moreover, motel operators are, in most cases, better situated to protect their guests from the wrongful acts of third parties than are the operators of shopping centers. The common law of Tennessee is equal to the task of distinguishing these disparate situations. The *Zang* court has made this distinction and promulgated a rule applicable to motel operators. We believe the Tennessee Supreme Court will adopt that rule when presented with the question.[4]

### B.

The preceding discussion addresses only the standard of care applicable to motel operators, that is, the "duty" and "breach" elements of the negligence cause of action asserted by plaintiffs. Before liability attaches, even if negligence is found, plaintiffs must establish causation, the third element of a negligence action. Given the unusual nature of this cause of action—potential liability is based on an injury occasioned by the wrongful and even criminal acts of persons not under the control of the defendants—the causation element is especially important and requires the careful attention of both the trial court and the factfinder.

■ The *Zang* negligence standard does not transform motel operators into insurers: they are not liable for all injuries to guests resulting from the wrongful acts of others. The instructions to the factfinder should state clearly that motel operators "are liable for the misconduct of third persons only when negligence of the [operator] is a proximate cause of the injury." 643 S.W.2d at 663. In determining causation, the factfinder should be instructed not to consider "whether the attacker would or would not have attacked" if certain protec-

---

**4.** Permission to appeal the *Zang* decision was denied by the Tennessee Supreme Court on Oc-

tober 4, 1982. We draw no inference from that action.

tive measures were taken, for that fact is not the ultimate causation issue. 643 S.W.2d at 665. The crucial inquiry is "what could and should have been anticipated by defendants" and what the result likely would have been if the defendants had adopted reasonable protective measures designed to prevent these anticipated dangers. *Id.* Some criminals are bent on theft or violence regardless of the obstacles placed in front of them; some crimes are therefore simply not foreseeable and others are not preventable, even with the exercise of utmost care.

The ultimate causation question is whether the injured party would have suffered the same injury if the motel operator had employed the protective measures which the factfinder determines should have been employed in the exercise of reasonable diligence. If the injured party would have suffered the same injuries in the face of due care on the part of the motel operator, then the motel operator's failure to exercise due care is not the proximate cause of the injuries. If the factfinder determines that the guest's injuries would not have occurred, or would have been less severe, if reasonable protective measures had been employed, then the failure to employ these measures is the cause of these injuries.

In accordance with the general rule, the plaintiff bears the burden of persuasion on the causation issue. That burden will sometimes be difficult or impossible to meet, since it requires proof of a counterfactual hypothesis: what would have happened if certain protective measures had been taken. Nonetheless, the balancing of competing considerations inherent in the *Zang* rule requires that the plaintiff bear this burden. Otherwise, motel operators would approach the status of insurers in cases where the circumstances attending the injury are unknown or unknowable. The *Zang* court rejected this result and we believe the Tennessee Supreme Court would also. Liability attaches only when the factfinder determines from all the proof and inferences that it is more probable than not that the injury would not have

occurred if the motel operator had adopted the protective measures or security devices which the factfinder determines would have been employed by a reasonably prudent operator.

### III.

Turning now to the facts of the case *sub judice,* we conclude that under the *Zang* rule plaintiffs have presented sufficient proof to survive a motion for a directed verdict. The evidence that the assailants gained entry to the room by kicking open the door; that the door fit poorly and had a grade three lock with no deadbolt lock; that other types of doors and locks were available and in use in the motel industry which could withstand the force applied to the door in this case; this evidence, together with the inferences that arise therefrom, is sufficient to permit a jury to find that a reasonably prudent motel operator would, under the circumstances of this case, have employed a more substantial door and lock; that the responsible defendants failed to adopt these protective measures; and that if the protective measures had been adopted the assailants would not have been able to gain entry into the plaintiffs' room. These facts, if found by the jury, are sufficient to establish a cause of action under the *Zang* standard. Hence, it was error to direct a verdict for the defendants.

### IV.

The property on which the motel is located is owned by defendant Tzu-Chi Hsu individually and is leased to defendant Hsu's Enterprises, Inc., a Tennessee corporation which owns and operates the motel and whose principal stockholders are defendant Hsu and his wife. Hsu's Enterprises operates the motel as a franchise of defendant Scottish Inns, Inc.

The parties have briefed and argued the question whether defendants Scottish Inns, Inc. and Tzu-Chi Hsu are liable. The District Court did not address this issue in its memorandum opinion and, given the

present state of the record, we decline to address it in this Court in the first instance. On remand, the District Court, if presented with the issue, may find helpful the discussion in *Zang*, wherein the court recognized that actions such as the instant one are "not based upon the liability of an owner for the condition of property but upon negligent operation of a business on the property." 643 S.W.2d at 667. A party is liable to the extent that it operates the motel. The District Court or other factfinder will be required to make findings regarding operation of the motel; absent such findings, this Court will pretermit resolution of this issue.

For the foregoing reasons, the judgment of the District Court is reversed and the cause remanded for a new trial.