**In re Gretchen Johanna ANDERSEN, Debtor.**

**Bankruptcy No. NK 84–00528.**

United States Bankruptcy Court, W.D. Michigan.

June 4, 1985.

Day, Sawdey, Flaggert & Porter, John T. Piggins, Grand Rapids, Mich., for Michigan Nat. Bank.

Walsh, Miller, Rayman & Langeland, Steven Rayman, Kalamazoo, Mich., for debtor.

M.S.A. §§ 19.9507(1), 19.9504(3) REPOSSESSION AND SALE WITHOUT NOTICE RIGHT TO A DEFICIENCY JUDGMENT

DAVID E. NIMS, Jr., Bankruptcy Judge.

This matter came before the court on a motion for relief from stay filed by Michigan National Bank (MNB) to obtain possession of certain real estate owned by Gretchen Andersen (Debtor) pursuant to a guaranty given by her in July, 1981, on the

debt owed by Andersen Swine Producers, Inc., a family farm business. A mortgage on the subject real estate was given to MNB by Debtor as security for the guaranty. The mortgage given to MNB was second to that of the Federal Land Bank of St. Paul (Federal Land Bank); on March 3, 1983, Federal Land Bank purchased the property at a foreclosure sale held by it, leaving Debtor with a statutory redemption period of one year.

On March 17, 1983, Andersen Swine Producers filed a petition under Chapter 11 of the United States Bankruptcy Code.[1] May 10, 1983, MNB obtained relief from the automatic stay and began liquidating, through repossession and sale, the collateral it held as security, which collateral consisted of farm machinery and equipment and a herd of pigs. Sales of the pigs and equipment were held without written notice to any members of Andersen Swine Producers, Inc., as required by Michigan Statute, Mich.Comp.Laws § 440.9504(3) (Mich.Stat.Ann. § 19.9504(3) (Callaghan 1981). After all items were sold, the amount that remained owing was approximately $32,000.00. Written demand for this amount was made upon Debtor and other guarantors, but no payment was made.

In January, 1984, MNB purchased Federal Land Bank's interest in the real estate for $129,000.00, thereby acquiring its rights. On March 5, 1984, one day prior to the expiration of the statutory redemption period, Debtor filed a petition under 11 U.S.C. Chapter 11.

MNB subsequently petitioned this court for relief from the automatic stay under 11 U.S.C. 362(d). A hearing was held, and proofs taken, on December 6, 1984. At the close of the hearing, the court concluded that whether or not Debtor would have the ability to adequately protect the interest of MNB and to carry out a feasible plan of reorganization depended on the legal sig-

nificance of MNB's failure to give the notice of sale required by Mich.Comp.Laws § 440.9504(3) at the time the pigs and equipment were liquidated. If, as argued by Debtor, failure to give notice bars a creditor from recovering a deficiency judgment, then Debtor's liability under the guaranty would be extinguished, leaving MNB with only the claim it purchased from Federal Land Bank.

The 1962 version of the Uniform Commercial Code (U.C.C.) was adopted in Michigan on January 1, 1964. 1962 Mich.Pub. Acts 174. Although there have been several amendments since then, including the adoption of the 1972 version of the U.C.C., the provisions which are relevant in this matter have not changed since the original enactment. Mich.Comp.Laws § 440.9504 sets forth the rights and duties of creditors and debtors upon disposition of collateral after default. Subsection (3) provides in pertinent part:

> "(3) Disposition of the collateral may be by public or private proceedings and may be made by way of 1 or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, [if he has not signed after default a statement renouncing or modifying his right to notification of sale."

Mich.Comp.Laws § 440.9507(1) states:

> "If it is established that the secured party is not proceeding in accordance

---

**1.** The case was initially filed as "Andersen Farm Partnership, a co-partnership consisting of Andersen Swine Producers, Inc., Arlo Johannes Andersen, Shirley Andersen, Kurt Andersen and Gretchen Andersen." It was subsequently determined that this filing was improper; the case was amended, on May 10, 1983, to "Andersen Swine Producers, Inc."

with the provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part."

If this provision were read to be the exclusive remedy of a debtor who did not receive notice, it would then appear that the noncomplying secured party would not necessarily be precluded from recovering a deficiency judgment; rather the debtor would have to establish what price would have obtained had he had notice; he would then receive a set-off of a difference between that price and the actual sale price on the amount still owing.

The question of the consequences of either failure to give the notice required under Mich.Comp.Laws § 440.9504(3) or of failure to conduct a commercially reasonable sale was decided in this district by Bankruptcy Judge Edward H. Benson in the case of *In re BroCliff* 8 U.C.C.Rep. Serv. 1144 (Bankr.W.D.Mich.1971). In that case the court found that the repossessed goods were sold without regard to their value and without notice of sale to any officers of the debtor-corporation. The court held at 1149:

"It is only when a sale is conducted according to the requirements of the UCC that the amount received or bid at the sale is evidence of the true value of the collateral. The secured party has the burden of proving compliance with the UCC in order to claim any deficiency."

This court ordinarily considers itself bound by decisions of another bankruptcy judge from this district, except where the decision has been overruled by a higher federal court or by the Michigan Supreme Court.

The Michigan Supreme Court has not ruled on the consequences of either failure to give proper notice or of holding a sale in a commercially unreasonable manner. The question of a debtor's remedies has come before the Michigan Court of Appeals in cases where notice was not an issue but where it was claimed that the collateral was sold in a commercially unreasonable manner. In *Wilson Leasing v. Seaway Corp.* 53 Mich.App. 359, 220 N.W.2d 83 (1974) the court stated at 371, 220 N.W.2d 83, "Even if a creditor disposes of collateral in violation of the U.C.C., the debtor is not entitled to completely avoid its obligation to the creditor. Rather, the debtor is entitled to recover 'any loss' occasioned by the secured party's failure to comply with the appropriate provisions of the U.C.C. U.C.C. 9–507(1)."

The United States Supreme Court, in *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940), has stated:

"The highest state court is the final authority on state law [citations omitted] but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. [citations omitted] An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, * * * in the absence of more convincing evidence of what the state law is, * * * should be followed by a federal court in deciding a state question."

The Sixth Circuit, in its most recent decision on the applicability of a state intermediate court decision in a federal diversity case, cited the last sentence of the above quotation and determined that the holding of a certain Tennessee Court of Appeals should apply to the diversity case before it, because, for various reasons, "[W]e *predict* the Tennessee Supreme Court would adopt the rule announced by a panel of the Tennessee Court of Appeals * * * *" *Kveragas v. Scottish Inns, Inc.*, 733 F.2d 409, 412 (6th Cir.1984).

■ Thus, it appears a state intermediate court decision, while not binding, should be followed unless there is some reason to believe that the state's highest court would decide the issue faced by the federal court differently.

This court does not believe that the holding of *Wilson Leasing v. Seaway Corp.* 53 Mich.App. 359, 220 N.W.2d 83 (1974) should necessarily be applied here for the following reasons. The question of lack of notice of sale was not touched upon in that case, and there is nothing in the opinion to suggest that the same standard would apply if lack of notice rather than the manner of sale were the issue. The Sixth Circuit Court of Appeals very recently stated in *First National Bank of Louisville v. Hurricane Elkhorn Coal Corporation, Logan & Kanawha Coal Company, Inc.*, 763 F.2d 188, 190 (6th Cir.1985):

> "Burden of proof allocations are governed by principles of fairness, common sense, and logic. A guiding principle is to assign the burden to the 'party who presumably has peculiar means of knowledge enabling him to prove its falsity if it is false.'" (citations omitted)

Where a debtor has not received notice of sale, by what means is he to support his allegation that the sale was not held in a commercially reasonable manner? Without an opportunity to be present, he would have no way of knowing who was at the sale, how the property was advertised, or any other important details. Thus the same statutory violation which may have caused a debtor's loss, also prevents him from proving it. For this reason it is quite likely that the Michigan Supreme Court would hold the burden of proof to be on the secured creditor, at least in cases involving lack of notice. Another reason the Michigan Supreme Court might well apply a different standard than did the Appellate Court is the fact that a majority of courts in other jurisdictions have done so. It

would therefore be consistent with the Supreme Court's holding in *Fidelity Union, supra,* and the Sixth Circuit's application of it in *Kveragas,* for this court to disregard the Michigan Appellate Court's decision in *Wilson Leasing.*

Among the Circuit Courts of Appeals cases that apparently did not read U.C.C. § 9–507(1)[2] as limiting the rights of a debtor who did not receive notice of sale is *Nixford Computer, Inc. v. Jet Forwarding, Inc.* 579 F.2d 1175 (9th Cir.1978). In that case, the court held that under Section 9–504 of the California Commercial Code, the right to a deficiency is lost when the secured party fails to give proper notice of sale. This view was stated, at page 1179, to be the "apparent majority view." Two other Circuit Courts of Appeals which have held, pursuant to U.C.C. § 9–504 as adopted, that failure to give notice bars absolutely any recovery of a deficiency are *Executive Financial Services v. Garrison* 722 F.2d 417 (8th Cir.1983) and *Comfort Train Air Conditioning v. Trane Co.* 592 F.2d 1373 (5th Cir.1979). None of the above cases make any mention of U.C.C. § 9–507(1), although each of the states in question has adopted it.[3]

Rather than find such an omission to be an oversight, it makes more sense to reconcile these holdings with U.C.C. § 9–507(1), and in fact there are a number of ways in which they can be found not to be inconsistent: U.C.C. § 9–507(1) permits the debtor to recover "any loss." First, such loss could be shown even in cases where the collateral is sold for the amount of the outstanding debt; if the debtor could show that the market value was significantly greater than the amount of debt, he would still have a loss recoverable under U.C.C. § 9–507(1). Secondly, the provision would appear to permit recovery of lost profits where provable, which would be possible if a debtor were unable to redeem equipment

---

**2.** Unless otherwise noted, the provisions interpreted by the cases cited herein are identical to M.S.A. §§ 19.9504(3) and 19.9507(1) [M.C.L.A. §§ 440.9504(3), 440.9507(1)], which are identical to the U.C.C. version.

**3.** See State Correlation Tables, U.C.C.Rep.Serv.

because of lack of notice. The burden of loss in these latter two instances would of course be on the debtor. Thus, U.C.C. § 9–507(1) can be read as expanding rather than limiting debtor's rights. He could rely on U.C.C. § 9–504(3) to preclude recovery of a deficiency; under U.C.C. § 9–507(1) he could, in addition, attempt to prove losses in cases where there is no deficiency. Also, since the first sentence of U.C.C. § 9–507(1) could only apply to violations of the commercial reasonableness requirement and not to the notice requirement, it is possible that some courts read U.C.C. § 9–507(1), and its placing of the burden of proof on the debtor, as applying only where the debtor's complaint is based solely on an alleged violation of the commercial reasonableness requirement. This would make sense in light of the fact that, as noted earlier, if the debtor had no notice of the sale, it might be impossible for him to prove his loss.

The question of whether the same standard applies for different violations of U.C.C. § 9–504(3) was addressed by the Sixth Circuit in *United States v. Willis* 593 F.2d 247 (6th Cir.1979).

In that case, three related companies known collectively as "Opticon" executed a $325,000.00 note in favor of a bank which, upon default of the note, assigned its rights to the S.B.A. The note was secured by corporate assets and guaranteed by Opticons principals, the Willises. The S.B.A., after taking possession of Opticon's assets, received offers of $200,000.00 and $210,-000.00 from interested buyers. Rather than accept these offers, the S.B.A. sold the assets at public auction and received only $41,115.47 for them. It then attempted to recover the deficiency from the Willises.

The District Court denied recovery on grounds that the manner of disposition was commercially unreasonable. On appeal the S.B.A. argued that cases whose holdings permitted guarantors to assert the defense of commercial unreasonableness were limited to cases involving the secured party's failure to comply with the U.C.C.'s notice requirement, and should not be applied in cases which turn on the manner of sale. In response the court stated at 256:

"This distinction is without legal significance. The crucial question under consideration concerns 'commercial reasonableness;' this remains so whether the factual context in which the issue is presented focuses upon proper notification prior to sale or the manner in which the sale is actually consummated. Having concluded that the standard to be applied is that of 'commercial reasonableness,' we hold that this requirement must be satisfied whether the facts involve a commercially reasonable notice prior to sale, or the commercial reasonableness of the sale itself."

The Sixth Circuit, then, equates the issue of the manner of sale with that of proper notification in determining the legal standard to be applied. Thus a finding of a failure of commercial reasonableness in either instance would result in the same consequence to the secured party's right to a deficiency judgment.

After affirming the District Court's holding that the S.B.A. had breached its duty imposed by U.C.C. § 9–504(3) to carry out a commercially reasonable sale, the court discussed the three different positions taken by various courts on the effect of this breach: Many courts, including the Ohio intermediate courts, hold that failure to comply with the requirements of U.C.C. § 9–504(3) precludes absolutely the secured party's action for a deficiency. Other courts hold that such failure creates a presumption that the value of the collateral equalled the indebtedness secured, and a few courts held that the debtor would be required to prove any loss he had sustained.

The court declined to adopt the rule used by the Ohio appellate courts and instead adopted the rebuttable presumption rule:

"We have adopted as the rule in this case that where the secured party has disposed of the collateral in a commercially unreasonable manner, it rests with

him to carry the burden of proof in rebutting the presumption that the fair market value of the assets equalled the indebtedness secured. Had sufficient evidence been adduced at trial, whether by appellant or defendants' to establish the fair market value of the assets in question, this court would not hesitate to permit appellant any benefit that it could derive therefrom. However, the fair market value of these assets was not established by the evidence of either party at trial." *Id* at 261.

■ The fair market value of the livestock and equipment sold by MNB was not established at trial. Consequently, application of the rebuttable presumption rule would, in this case, result in a denial of MNB's right to recover the deficiency.

As MNB failed to rebut the presumption that the collateral was worth the amount of the debt, its claim for a deficiency judgment is disallowed and its motion for relief from stay is dismissed.