Everett **ROYAL** and wife, Lois **Royal,**
Plaintiffs-Appellees,

v.

**DAYS INNS OF AMERICA, INC.,**
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section, at Knoxville.

Nov. 14, 1985.

Application for Permission to Appeal
Denied by Supreme Court
March 24, 1986.

Phillip A. Fleissner, Fleissner, Cooper & Marcus, Chattanooga, for defendant-appellant.

Jerry H. Summers, Thomas Wyatt, Chattanooga, for plaintiffs-appellees.

HIGHERS, Judge.

This appeal arises from a jury verdict for the plaintiffs in the amount of $20,000 for damages allegedly due to the negligence of the defendant motel in failing to exercise reasonable care to protect its guests from criminal activity.

Sometime during the night of May 12, 1981, plaintiff, Lois Royal, awoke in her room on the ground floor of the Days Inn motel at East Ridge in the Chattanooga area where she and her husband were staying en route to their vacation. When she awoke, she found a burglar in the room. As the intruder took her purse, Mrs. Royal jumped out of bed and attempted to restrain him. She was unable to do so, however, and the felon fled through the room's sliding glass door which opened onto the parking lot. The burglar escaped with Mrs. Royal's purse containing cash for the vacation and her "lifetime collection of jewelry," including her wedding band.

Mrs. Royal and her husband sued Days Inn of America for personal injury and property damage. The plaintiffs asserted that defendant was negligent in that it failed to take adequate precautions for the protection of its guests. The claim for property damage was dismissed under the hotel safe law. See T.C.A. § 62–7–103. The jury returned a verdict in favor of plaintiffs, awarding Mrs. Royal $18,000 and

Mr. Royal $2,000 on his derivative claim. Defendant's motion for judgment N.O.V., for new trial, and for remittitur were all overruled.

■ Defendant appealed arguing that it should have been granted a directed verdict or alternatively a new trial. It argues for a directed verdict on the grounds that there was no proof that defendant breached an innkeeper's duty of care, that there was no competent proof how the attack occurred, and that there was no expert testimony to establish the relevant standard of care. In short, defendant argues there was no evidence establishing the elements of duty, breach, or causation. In order to have granted a directed verdict for defendant, the trial court must have viewed all evidence in a light most favorable to plaintiffs and still have concluded that defendant would prevail as a matter of law. *Bowers v. Potts*, 617 S.W.2d 149 (Tenn.App.1981). Defendant contends that the burglar might have entered through the hallway rather than through the sliding glass door or that the burglar might have manipulated the sliding glass door lock rather than have found it in a defective condition as argued by plaintiffs. Viewing the evidence most favorably to plaintiffs, however, we find there is material evidence in the record that the burglar did find the glass door lock defective and that the burglar entered through the opening because that door was open when he left. The evidence also indicates that break-ins had occurred on previous occasions and that defendant was aware that many glass door locks had at one time been in need of repair. Thus, there was sufficient proof of how the burglary occurred so as to rebut a directed verdict. The motion for directed verdict was properly denied, but we believe on other grounds that the case must be remanded for a new trial. Because of the likelihood that certain questions raised on appeal will be confronted when the case is re-tried, we will address them briefly here.

First, it is argued that evidence of other, unrelated criminal activity on defendant's property should not have been admitted. Second, according to defendant, the court erred in its charge to the jury on the standard of care. Third, it is alleged that evidence of defendant's net worth and of property losses connected with Mrs. Royal's mental anguish was inadmissible.

The trial court charged the jury as follows regarding the standard of care:

An innkeeper owes its guests the duty to exercise reasonable and ordinary care to its guests. Where the Plaintiff's injuries are caused by the act of a third party, known or other than the Defendant innkeeper or hotel operator, then said Defendant is liable only if the act of the third party was made possible by the failure of the innkeeper to exercise reasonable care for the protection of its guests.

So to be entitled to the verdict, Plaintiffs must show not only that a defective or an unreasonably dangerous condition on the premises caused their injuries, but they must also show that the Defendant knew or should have known by or through the exercise of reasonable and ordinary care the defective or reasonably dangerous condition long enough to have corrected said condition.

■ The defendant argues that these instructions state only the general standard of care and that the charge is incomplete without more specific instructions as offered by defendant. The requested instructions, however, are little more than excerpts from the case of *Cornpropst v. Sloan*, 528 S.W.2d 188 (Tenn.1975). This court has rejected the applicability of *Cornpropst* in cases involving an innkeeper-guest relationship. *Zang v. Leonard*, 643 S.W.2d 657 (Tenn.App.1982); see also *Kveragas v. Scottish Inns Inc.*, 733 F.2d 409 (6th Cir.1984); *Budoff v. Holiday Inns Inc.*, 732 F.2d 1523 (6th Cir.1984). Note, 14 M.S.U.L.REV. 189 (1984). The *Zang* decision does not require jury instructions such as those proffered by appellant. In *Zang*, the court specifically rejected the argument that the following instruction was necessary:

I further charge you that if the owner is to be held liable for certain criminal acts of third persons, there must be a showing that the owner was on notice in some manner of the imminent probability of the act.

643 S.W.2d at 663. Both charges requested by appellant here, but rejected by the trial court below, bear this language of "imminent probability." As did the court in *Zang,* we hold that there was no error in refusing these requested instructions.

■■■ The defendant further assigns error to the admission of evidence relating to defendant's net worth. It is not denied that a defendant's financial condition is admissible in determining punitive damages. *See Odum v. Gray,* 508 S.W.2d 526 (Tenn. 1974). The defendant contends, however, the plaintiff must make out a prima facie case of gross negligence. The trial court apparently held that plaintiffs did make out such a prima facie case of gross negligence because it denied defendant's motion for a directed verdict on that issue. Since the jury, therefore, considered whether defendant was liable for punitive damages, we cannot rule that evidence of defendant's net worth was improperly admitted. *Breault v. Friedli,* 610 S.W.2d 134 (Tenn. App.1980).

■■■ The defendant further submits as error the trial court's admission of evidence of criminal activities on the defendant's premises over some eighteen months before the burglary of plaintiffs' room. It is argued that most of the fourteen prior criminal events bore little or no resemblance to the burglary of the plaintiffs' room and should have been excluded as irrelevant. Appellant also argues that the testimony of Lieutenant Hughes that crime was greater at Days Inn than at other, nearby motels was highly prejudicial. The plaintiffs maintain that prior events are important to show that defendant was aware of a danger to its guests and a need for greater security. Whether evidence is admissible rests within the sound discretion of the trial court. *Strickland v. City of Lawrenceburg,* 611 S.W.2d 832 (Tenn.App.

1980). The defendant correctly points out that the trial court must weigh factors of confusion and prejudice when allowing the admission of evidence. *See McCormack v. Riley,* 576 S.W.2d 358 (Tenn.App.1978). The *Zang* court made clear that whether "the motel was such as to be convenient to law violators" and whether "other patrons had been previously assaulted on the premises," 643 S.W.2d at 664, are relevant factors in deciding what protective measures should have been employed. The court in *Kveragas* added "other criminal acts" to prior assaults occurring on the premises. The *Kveragas* court apparently did not mean to include all types of crimes, and the *Zang* court used the word "similar" to describe the relevant type of crimes. Among the fourteen crimes introduced into evidence here, four were robberies occurring in the rooms of the inn. One was an assault. Three robberies occurred outside rooms. There were also three incidents of apparent vandalism and three incidents of hubcap stealing. All these incidents except the vandalism and the hubcap thefts appear to be serious crimes. They may not each have all the characteristics of the burglary of the plaintiffs, but the severity of the prior incidents matches that of the events in this case.

■■■ Whether the stealing of hubcaps and the various acts of apparent vandalism may also be admissible, as noted above, is a matter of the trial court's discretion. Such incidents could be relevant in establishing that general criminal activity on the premises was high, creating a climate conducive to other crimes specifically similar to the one in this case. Of course, the trial court need not allow all evidence of even the most insignificant incident. It is conceivable that many incidents normally occur on hotel and motel property, but that a revelation of the sheer numbers to an unsuspecting jury would be shocking and prejudicial. Thus, the trial court here wisely refused admission of evidence of some 103 additional criminal incidents.

Such data could also be misleading were not it compared to other inns. Thus, the

testimony of Lieutenant Hughes was not improper. In short, testimony of the type and number of crimes and measures taken to combat crime in one motel would be meaningless to a jury without comparisons to other establishments especially since the *Zang* court says that the jury must find as a matter of fact what protective measures would be employed by a reasonably prudent motel operator under the same circumstances. 643 S.W.2d at 663.

 The defendant finally contends that the trial court should have excluded all mention of property loss, including references to the sentimental value of plaintiff's jewelry. The claim for property loss was dismissed, but the trial court permitted the plaintiff to testify that the jewelry "had a lot of sentimental value to it" in order to establish the extent of mental anguish occasioned by its loss. The trial court instructed the jury that the evidence was to be considered solely for the purpose of determining whether the plaintiff suffered any mental anguish. Sentimental value of personal property is not recognized in Tennessee as an element of damages. *See Merritt v. Nationwide Warehouse Co. Ltd.*, 605 S.W.2d 250 (Tenn.App.1980). Since the property damage claim was disallowed, and one cannot recover the sentimental value of personal property, it was improper to allow this testimony as a basis for an award on mental anguish.

Further, we cannot say that this error was harmless because it is obvious that plaintiff's counsel relied heavily upon this testimony in argument to the jury on the issue of damages. In final argument it was stated:

> Now, this is a hard one, Ladies and Gentlemen. This is the biggest item in this particular case. Considering—I think it's significant to the fact, Ladies and Gentlemen, that as a result of the negligence of the Days Inn that this lady, and I think she would tell you, that the most important to her was her jewelry ... Now, you measure that as to what it would mean to you. What's the value of the lost jewelry?

It seems readily apparent that the loss of the jewelry was argued as "the biggest item in this particular case," although the property loss itself had been excluded as an item of damages. It was error, therefore, for the court to allow the plaintiff to testify as to sentimental value of the lost items, and it is clear that the jury considered this matter in returning its verdict.

The result is that the judgment of the trial court is reversed, and the matter is remanded for a new trial. Costs of appeal are adjudged against the appellees.

NEARN, P.J. (W.S.), and CRAWFORD, J., concur.