Shirley Bob Danile, Plaintiff-Appellee, v. The Oak Park Arms Hotel, Inc., a Corporation and Ronald James Mulligan, Defendants, The Oak Park Arms Hotel, Inc., a Corporation, Defendant-Appellant.

Gen. No. 49,382.

First District, Second Division.

December 29, 1964.

Rehearing denied January 19, 1965.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for appellant.

John C. Mullen, of Chicago (James P. Chapman, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal from a judgment entered on a verdict, June 14, 1963, in the Municipal Court of the Village of Oak Park, where the defendant-appellant was found negligent in the manner in which it operated its Hotel and was ordered to pay the plaintiff-appellee the sum of $25,000.

The appellee was a guest in the appellant Hotel while here to visit her fiancé's family when in the early morning hours of January 30, 1960, she was raped by a bellboy employed by the Hotel. At the trial below, both the bellboy and the Hotel were parties defendant. The jury found for the appellee and against both appellants. Only the Hotel appeals from the judgment entered below.

The evidence introduced at the trial, taken in the light most favorable to the appellee, shows that the Hotel employed as a bellboy one Ronald James Mulligan, 17 years of age. Mulligan had been employed by the Hotel for some six months prior to the occurrence and during that time his employers had no reason to suspect him of any misconduct. There had been no complaints concerning his behavior during the period of his employment.

According to Mulligan, one of the guests of the Hotel asked him to bring some ice up to his room. This was done about 10:00 o'clock in the evening. Mulligan testified that he was offered a drink by the occupants of the room and took three or four gulps from a bottle. It was then stated that Mulligan returned to work.

Mulligan testified further that about 3:00 o'clock in the morning he assisted a guest of the Hotel by loading his luggage into a taxi while the guest remained in the Hotel. When Mulligan returned, the guest requested him to get a glass and some ice and asked him to have a drink. Mulligan did so.

About 4:00 o'clock in the morning, one of the guests in the room to which Mulligan had originally delivered the ice invited him up for another drink. He stayed with that guest for another hour during which time he said he had another three or four drinks.

According to his testimony, Mulligan then went behind the Hotel desk to obtain a pass key which was located there. He looked through the register for the name of a girl. He said he was interested in finding a woman who was alone. He found the appellee's name and went up to her room.

He got the pass key from a ring on a hook behind the desk which faced the lobby of the Hotel. In order to get to the key behind the desk, it was necessary to enter from the rear passing a switchboard

4

which was immediately behind the Hotel desk. Both a switchboard operator and a night desk man were on duty at the time.

The appellee had returned to her room earlier that evening after spending the evening with her fiancé and his mother. She testified that she was awakened by the weight of Mulligan on top of her. She screamed and tried to get away, but being unable to do so, she told Mulligan he could have her money or anything else in the room. Mulligan apparently made no answer, but raped the appellee and then ran out of the room. The attack took place about 5:00 o'clock in the morning. Mulligan went to the Hotel lounge, vomited, and fell asleep.

The appellee called her fiancé and he came to the Hotel and informed the manager of what had happened. The manager called the police and they found Mulligan asleep in the Hotel lounge. Between the time of the attack on the appellee and the time the police came, Mulligan had been awakened by one of the Hotel employees to deliver the morning papers to the guests by leaving them in front of the doors to the rooms, and had then returned to sleep.

Mulligan was then questioned by the police, and he confessed his crime. This interview took place at the Hotel in the presence of the Hotel officials. A statement was taken later that morning at the police station.

It is the appellant's theory of the case that it was not negligent and therefore there is no liability on its part for the occurrence of which the appellee complains. It says it had no previous knowledge of misconduct on the part of Mulligan and that no one on duty knew that he was drinking that night. The appellant also claims that the jury was improperly instructed in that Plaintiff's Instruction 2 told the jury that the Hotel owed the appellee a high degree of

care while the law of this state is that a hotel owes its guests ordinary care. It is also claimed that the Court below should have allowed as evidence the statement taken by the police at the station house that morning.

■ We take the appellant's claim that it was not negligent to be an argument that the verdict reached by the jury was against the manifest weight of the evidence. The jury was the trier of fact in this case and this court cannot substitute its judgment for that of the jury unless it reached a clearly erroneous conclusion. Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63 (1959); Both v. Nelson, 46 Ill App2d 69, 196 NE2d 530 (1964); Yankey v. Oscar Bohlin & Son, Inc., 37 Ill App2d 457, 186 NE2d 57 (1962); Cardona v. Toczydlowski, 35 Ill App2d 11, 180 NE2d 709 (1962).

■ There was evidence presented at the trial that Mulligan had been drinking while on duty and that he was absent from his post for two periods of about one hour each. There was evidence that in order to get the pass key to the rooms, Mulligan had to pass near a switchboard operator and a night attendant who could have determined that he had been drinking while on duty. We do not say that the evidence on these points is conclusive, but evidence was such that a jury might reasonably come to the conclusion that the Hotel staff could have and should have known of Mulligan's absence from his post when he was upstairs drinking and they should have found out where he was. There was some evidence that the staff should have seen Mulligan go in and take the pass key, and a jury could reasonably find negligence in that they should have guarded this key more carefully and did not. Whether we agree with the jury's conclusion or not, we have no basis for substituting our opinion of the evidence for the one

6

it gave. The verdict is clearly not against the manifest weight of the evidence.

The appellant next claims that an error was committed at the trial in that its cross-examination of Mulligan was unduly restricted by the Court below. The appellant sought at trial to bring in the statement made by Mulligan to the police the morning of his arrest. This is not the original interview which took place at the Hotel, but one which occurred later in the morning at the police station. The appellant claims that statements made in this second interview contradict the testimony given by Mulligan at the trial. The Court below would not allow the introduction of this evidence partly because it contained highly prejudicial matter concerning the appellee that was not relevant to the case.

We will not determine here whether or not the ruling of the Court below is correct, for we are convinced that if the ruling were error, it could not have been prejudicial to the appellant. In its brief the Hotel says that it wanted the statement before the jury to show that Mulligan was on a lark of his own and not in the scope of his employment. This would be prejudicial error only if the jury decided the case on the basis of *respondeat superior*. We will assume, however, that the basis of the decision was negligence on the part of the Hotel. We must indulge in every reasonable presumption to uphold a verdict; error is never presumed. O'Berry v. O'Berry, 36 Ill App2d 163, 183 NE2d 539 (1962). On the question of negligence it does not matter whether or not Mulligan was acting within the scope of his employment. The only question presented is whether the Hotel was negligent in its supervision of him. On this basis, we decline to go into the merits of the refusal of the Court below to permit the admission of the statement.

■ On cross-examination, the appellee's attorney asked the vice-president of the Hotel whether he knew Mulligan had a criminal record. The question was objected to and the Court sustained the objection, instructing the jury to disregard the question and answer. The jury presumably did so, and we have, therefore, no basis for finding error. People v. Hansen, 378 Ill 491, 38 NE2d 738 (1942); People v. DiLella, 52 Ill App2d 403, 202 NE2d 77 (1964).

The appellant raises several points identical with the one just discussed. In each instance the Court sustained an objection and instructed the jury to disregard the question. As we said in State v. DiLella (supra) we must assume a jury follows the instructions given it by the court, ". . . for if the court indulged in the opposite assumption a jury trial would be an impossibility."

■ The appellant next claims that the Court below was in error in instructing the jury that the Hotel owed the appellee a high degree of care to protect her from harm. The instruction is supported by Fortney v. Hotel Rancroft, Inc., 5 Ill App2d 327, 125 NE2d 544 (1955). There the court distinguished cases where injuries resulted from defective or dangerous conditions existing in the premises of the innkeeper and cases where the injury arose from the positive action of one person against another. Thus, if a guest of a hotel slips on a defective staircase, the hotel is subject to ordinary care, but if the guest is assaulted by an employee of the hotel or by a third person, the hotel may be held to a high degree of care. We take note that some cases in this jurisdiction have held a hotel to reasonable and ordinary care, but with the exception of Walden v. Chelsea Hotel Co., 337 Ill App 292, 85 NE2d 861 (1949), none of these dealt with a situation where a guest was assaulted. We hold that in these circum-

stances, a reasonable degree of care is a high degree of care. We find no reversible error in this instruction.

■ Finally, the appellant claims the verdict is excessive in amount. From the appellant's brief and argument it would seem that they believe the appellee is entitled only to out-of-pocket expenses for medical care resulting from her rape. The appellee need not offer testimony on the value of her chastity, nor need a party offer exact proof of the monetary value of an emotional shock. The jury is capable of using its own knowledge to determine the strain and shock suffered by the appellee. In view of the attack made upon her, we cannot say that the amount of the verdict is excessive.

We hold, therefore, that there was no prejudicial error at the trial, and we affirm the judgment of the Court below.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.