Paul TRUSIANI et al.

v.

CUMBERLAND AND YORK DISTRIBUTORS, INC.

Supreme Judicial Court of Maine.

Argued June 8, 1987.
Decided Feb. 24, 1988.

---

John Kelly (orally), Leland Chisholm, Kelly, Remmel & Zimmerman, Portland, for Marinos.

Daniel G. Lilley (orally), James C. Hunt, Portland, for Trusiani.

Brett B. Baber, Thomas F. Monaghan (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

NICHOLS, Justice.

The Defendant, Cumberland and York Distributors, Inc., appeals from a judgment entered by the Superior Court (Cumberland County) upon a jury verdict for the Plaintiffs, Paul Trusiani and John and Henrietta Marino, on a common law negligence count.

On appeal, the Defendant contends that the trial court erred as a matter of law in determining that it owed a duty to the Plaintiffs to exercise reasonable care in preventing an employee who had consumed self-supplied liquor at a company Christmas Party, but was not visibly intoxicated, from operating his motor vehicle. The Plaintiffs Marino cross-appealed contending that the court erred in denying them prejudgment interest pursuant to 14 M.R.S. A. § 1602(1) (Supp.1986) inasmuch as they neither objected nor joined in the Plaintiff Trusiani's motion to continue.

We conclude that there was no legal duty devolving upon the Defendant corporation under these circumstances, and accordingly we vacate the judgment.

The Defendant, Cumberland and York Distributors, Inc., is a wholesale distributor of beer and wine. During the month of December, 1982, Edward Bryant Grantham, age 20, was employed by it to drive a delivery truck in the Portland area. In addition to this job, Grantham had a second job at the South Portland Burger King where he worked a couple of nights a week from 5:00 P.M. until midnight or 1:00 A.M. His supervisor knew that he had a second job, but was unaware of his precise hours.

On December 23, 1982, Grantham drove for the Defendant from 6:58 A.M. to 5:14 P.M., and then worked at Burger King until midnight. The following day, after working for the Defendant in the morning, Grantham returned to the Defendant's place around noon to "cash-up." At that time the Defendant provided its employees with party platters of cheese, meat, bread and rolls in celebration of Christmas. Each employee was also given a bottle of champagne and a turkey.

At that time the Defendant had a policy of prohibiting the drinking of alcoholic beverages on its premises. That policy had been orally communicated to the drivers by Peter Mooney, the shipping supervisor. The Defendant, as a wholesale distributor of beer and wine, was also subject to regu-

lations promulgated by the Maine State Liquor Commission that prohibited a wholesale licensee, such as this Defendant, from permitting the consumption of intoxicating liquor on the premises.

There was no evidence that Grantham had consumed any alcoholic beverages prior to "cashing-up;" however, he had purchased a fifth of whiskey which he brought to his employer's Christmas gathering. There he consumed two or more drinks of whiskey and coca-cola. Grantham testified that he did not "flaunt" this consumption and that he drank the whiskey from a coca-cola can. Several other drivers were drinking beer in their supervisor's office. Although this was a brand of beer sold by the Defendant there was testimony that the Defendant did not supply alcoholic beverages at this party. Grantham testified that his supervisor saw them drinking but did not do or say anything about it. Mooney testified that he did not observe the drivers drinking alcoholic beverages, nor did he knowingly allow them to continue.

When Grantham "punched out" at about one o'clock that afternoon, he drove immediately to a South Portland fast-food restaurant and ate a substantial lunch. He then stopped at his girlfriend's home in Scarborough to drop off his turkey and champagne. Grantham then proceeded southerly along U.S. Route 1 toward his Saco home in conditions of snow and sleet. As he proceeded Grantham apparently fell asleep and, allowing his vehicle to drift across the centerline, he collided with a north-bound automobile occupied by the Plaintiffs, Paul Trusiani and John Marino. A witness at the scene of the accident testified that Grantham seemed "extremely groggy" and said "Gee, I don't remember anything, I must have fallen asleep ... I just got out of work."

Grantham's blood-alcohol test, taken within the hour, was .017.[1] After experts gave inconsistent testimony as to the reliability and significance of the results from that test, the jury returned a verdict for

---

1. For statutory presumption arising from blood-alcohol level in cases alleging criminal violations, *see* 29 M.R.S.A. § 1312(5)(A), (B), (C) (1978 & Supp.1987) and § 1312–B(1)(B) (Supp. 1987).

the Defendant employer on a count brought under Maine's Dram Shop Act, 17 M.R.S.A. § 2002 (1983), and a verdict for the Plaintiffs on the negligence count. The court denied the Defendant employer's motions for judgment notwithstanding the verdict and for a new trial. Judgment was entered on these verdicts.

By submitting the negligence count to the jury the Superior Court implicitly concluded that the Defendant had a duty to the driving public to use reasonable care either to prevent its employees from participating in conduct that could impair their driving or to prevent them from driving under such circumstances. Although the court did not discuss the origin of this duty in its jury instructions, it did elaborate in its order denying the post-trial motions.

> In this case there are special circumstances that affect the court's decision that the defendant Cumberland and York had a duty to the plaintiffs to prevent the consumption of alcohol on its premises by its employee Edward Grantham. This employer is a wholesale distributor of alcoholic beverages. Its own company policies prohibit the consumption of alcoholic beverages by employees on the premises. State regulations also prohibit such consumption. The imposition of liability does not impose a new standard of conduct that may impair the effective operation of a business unprepared for such a standard. Liability only adds to the consequences of failing to do what company policy and state regulation already require them to do.

On appeal of that judgment the Defendant contends that the Superior Court erred in holding that the Liquor Commission regulations gave rise to such a duty and further argues that there is no other basis in law for imposing a duty under these circumstances.

Negligence, we know, does not exist in the abstract. Fundamentally, whether one party owes a duty of care to another is a question of law. *Vu v. Singer Co.*, 538

Supp. 26, 29 (N.D.Cal.1981); *Bence v. Crawford Savings & Loan Association*, 80 Ill.App.3d 491, 492, 35 Ill.Dec. 902, 903, 400 N.E.2d 39, 40 (1980); *Donahue v. Copiaque Union Free School District*, 64 A.D. 2d 29, 31–32, 407 N.Y.S.2d 874, 877 (1978). Duty involves the question of "whether the defendant is under any obligation for the benefit of the particular plaintiff." Where a court imposes a duty in a negligence case, "the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk." W.P. Keeton, *Prosser and Keeton on Torts* § 53 at 359 (5th ed. 1984).[2] Professor Prosser has summed it up:

> In the decision of whether or not there is a duty, many factors interplay: the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind."

Prosser, *Palsgraf Revisited*, 52 Mich.L. Rev. 1, 15 (1953).

These Plaintiffs argue that there was an "immense" risk that an employee would consume alcohol on the Defendant's premises and then drive, endangering the lives of other drivers. Thirty-five thousand (35,-000) cases of beer were stored in the warehouse supervised by Mooney. The quantity was so great that an employee could consume some alcohol and its absence probably would not be discovered. Because the Defendant's business involved transporting beer and wine via motor vehicles, they argue that the potential danger resulting from employees driving was great. Furthermore, the Plaintiffs continue, the burden on the Defendant to prevent this risk was minimal. It had only to prohibit the consumption of its alcohol on the premises;

---

2. *See generally* on formulation of the negligence standard *McCarty v. Pheasant Run, Inc.*, 826     F.2d 1554, 1556–57 (7th Cir.1987).

such a policy was already required by the company and the Maine State Liquor Commission.[3]

The "risk analysis," so urged upon us by the Plaintiffs, however, only results in the imposition of a duty to prevent consumption of Defendant's alcohol on the premises. In this case, the Defendant did not supply Grantham with alcohol, rather he purchased the whiskey and he, himself, brought it onto the premises. Furthermore, Grantham was not visibly intoxicated. Visible intoxication might have put the Defendant on notice that the inebriated employee could cause injury to someone. To impose a duty making the Defendant employer responsible for consumption of any alcoholic beverage on its premises, regardless of the absence of signs of visible intoxication, essentially makes the employer strictly liable for its employees' actions.

The Plaintiffs further argue that the Defendant had a duty to prevent Grantham from operating his vehicle because he was tired. The Defendant's supervisor might have known that Grantham was working a second job; however, there was no evidence that the Defendant was aware of Grantham's schedule for the days prior to the accident and how such a schedule might have affected his ability to drive. An employer is not responsible for gathering information about its employees' personal lives and closely monitoring their behavior to insure that nothing at work converging with those habits could cause harm to third parties. We are not prepared to prescribe such a paternalistic duty upon employers generally. We do not need to hold, and we intimate no opinion whatsoever, as to whether there may be circumstances under which an employer may have a duty to the public to exercise reasonable care in warning or prohibiting an employee from operating a vehicle upon the highway. There was no indication from Grantham's behavior that his ability to operate would be impaired.

Additionally, the Plaintiffs argue that the existing liquor regulations are the source of a legal duty.[4] In this jurisdiction violation of a safety statute is not negligence per se, but rather may be evidence of negligence. *Dongo v. Banks*, 448 A.2d 885, 889 (Me.1982). A trial court is free to consider company or state regulations among the factors to be weighed in deciding whether a legal duty existed. In this case, the Liquor Commission regulations and the company drinking policy were directed at safe operation of company delivery trucks. At the time of this collision on U.S. Route 1, however, Grantham was on his own and beyond the scope of these regulations. Consequently, the regulations

---

**3.** Pursuant to its grant of power in 28 M.R.S.A. § 53 (Pamph.1986), the State Liquor Commission promulgated regulations 1.8 and 3.3 which provide:

> 1.8 No licensee shall permit or allow visibly intoxicated persons to remain on the licensed premises. No licensee shall show effects of, nor allow any of his employees, agents, or entertainments [sic] to consume or show any effect of liquor while on duty or performing on the licensed premises.
> 3.3 No retail store licensee, nor wholesale licensee shall consume or permit the consumption of intoxicating liquors on his licensed premises. Licensed premises shall mean and include, in addition to the principal licensed premises, all vehicles owned and operated by such licensee, and used in the sales, transportation and storage of malt and/or vinous liquors.

Me. Liquor Comm'n Reg. 1.8, 3.3 (1982).

**4.** Contrary to the Plaintiffs' suggestion, *Restatement (Second) of Torts* § 321 cannot serve as the basis for imposing a duty on the Defendant. This section states:

> (1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.
> (2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

Under this section, it is only appropriate to impose a duty if the Defendant performed the initial act that subsequently created the unreasonable risk. In this case the Defendant's only act was to organize and sponsor a company Christmas Party at which the Defendant did not serve alcohol. This act did not involve any unreasonable risk of physical harm to another. Rather, any risk to motorists on U.S. Route 1 arose out of Grantham's driving while he was drowsy.

are of no foundation for imposing any duty on the Defendant under these circumstances.

After giving full consideration to the Plaintiffs' several arguments and finding no notice to the Defendant of its employee's drowzy and perhaps inebriated state, we conclude that here the Superior Court erred when it determined that the Defendant employer owed a duty to the Plaintiff motorists who were injured in this collision with the employee's automobile.

Inasmuch as the judgment on the verdict for the Plaintiff must be vacated because of the legal error in imposing this particular duty on the Defendant employer, it becomes unnecessary for us to address the issue of prejudgment interest.

The entry is:

Judgment vacated.

Remanded for entry of judgment for the Defendant.

Cross-appeal denied.

McKUSICK, C.J., and GLASSMAN and CLIFFORD, JJ., concurring.

SCOLNIK, Justice, dissenting.

I respectfully dissent.

I disagree with the Court's conclusion that the jury verdict must be vacated on the ground that the defendant in the circumstances of this case owed no duty to these plaintiffs.

The determination of the existence of a duty is necessarily an ad hoc process, specific to the facts of each case. Concededly, no legal duty is owed to an unforeseeable plaintiff. *See Palsgraf v. Long Island R.R.*, 248 N.Y. 339, ———, 162 N.E. 99, 99–100 (1928). But when a plaintiff is foreseeable, a duty will exist if "reasonable persons would recognize that it exists." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts*, § 53 at 359 (5th ed. 1984) [hereinafter "Prosser & Keeton"]. In this case, it is reasonable for the

trial court and the jury to have recognized a duty on the part of the defendant to protect the plaintiffs from an unreasonable risk of harm caused by the defendant through its employee.

Viewing the evidence in the light most favorable to the plaintiffs, we must conclude that the jury believed Grantham's testimony that at the informal Christmas party in the office of shipping supervisor Mooney, Mooney saw Grantham and other drivers drinking their own liquor in violation of both company policy and State Liquor Commission regulations, but did not do or say anything to prevent such conduct. We must also conclude that the jury found that Mooney was aware Grantham was employed at Burger King in addition to his position at Cumberland and York and that Grantham had been driving a company delivery truck for 10 hours the day before the accident and from 6:55 A.M. until 12:50 P.M. the day of the accident. It would not require a great leap of logic for Mooney to realize that Grantham and his co-workers might become drowsy, if not intoxicated, as a result of the impromptu drinking party held in Mooney's office.[1]

The defendant and Mooney knew that the employees drove to and from work in their automobiles. An employer is ordinarily not obligated to restrain the operation of a motor vehicle by an employee who he knows is impaired. But where the employer shares responsibility for that impairment, a duty to third persons is clearly imposed upon him. For Mooney to have allowed Grantham and his co-workers to drink intoxicating liquor in Mooney's office and then drive away in their motor vehicles after working since early morning was to create a foreseeable and unreasonable risk of harm to innocent third party motorists. *See Dickinson v. Edwards*, 105 Wash.2d 457, 474, 716 P.2d 814, 823 (1986) (Utter, J. concurring); *Kelly v. Gwinnell*, 96 N.J. 538, 548, 476 A.2d 1219, 1224 (1984).

---

1. Even if Mooney did not realize that Grantham and others might become drowsy as a result of their drinking, the jury could have concluded that a reasonable person in Mooney's position should have realized this. *See Restatement (Second) of Torts*, §§ 284(a) 285(d); § 285, comment (g); *see also* Prosser and Keeton, § 32 at 175; O.W. Holmes, *The Common Law*, at 87 (1881).

The duty to the Plaintiffs does not depend on the existence of company policy or State Liquor Commission regulations prohibiting drinking on the premises. Rather, it derives from the common law "reasonably forseeable plaintiff" standard followed in American Jurisprudence for nearly six decades. *See Palsgraf,* 162 N.E. at 100, 101; Prosser & Keeton, § 31 at 171. However, company policy and State regulations are relevant factors to be considered together with all other circumstances in determining whether a plaintiff is reasonably foreseeable. The Superior Court correctly perceived that common law negligence liability was an additional consequence of failing to do what company policy and State regulations already required the employer to do. The Court's heavy reliance on the absence of visible intoxication and the fact that defendant did not supply Grantham with the liquor he consumed is misplaced. Both of these issues are critical to liability of a social host[2] and to liability under the Dram Shop Act. This case involves an employer and not a social host, and the jury appropriately rendered a verdict on the Dram Shop Count in defendant's favor. Moreover, in the context of common law negligence, the employer's tacit acquiesence in the employee's consumption of his own intoxicants in the permissive environment of an impromptu Christmas party on the employer's premises is, for purposes of determining the existence of a duty, the functional equivalent of an employer affirmatively furnishing liquor at such a gathering.

Far from creating a "paternalistic duty" or imposing strict liability, a result that the Court understandably seeks to avoid, the facts of this case form a firm foundation upon which a common law duty may be predicated. The jury could reasonably have concluded that the Plaintiff was foreseeable and therefore a duty was owed and breached by the defendant and that damages were proximately caused by the breach of that duty. Liability here is not predicated on the mere failure to warn or prohibit an employee, not otherwise visibly intoxicated from the consumption of his own liquor, from operating his own motor vehicle. To the contrary, it is based on an act of omission, a failure by the employer to prevent an employee under its control from consuming liquor in violation of company and State regulations, and in fact acquiescing in such conduct.[3]

In these circumstances, particularly in view of Mooney's awareness that Grantham had another job and had a potential for fatigue, the jury was justified in concluding that this first act of nonfeasance generated the further duty on the part of the employer either to warn the employee of the dangers of drowsiness or perhaps prevent the employee from operating his motor vehicle.

Moreover, I am persuaded that the widely used risk-benefit approach to determine the existence of a duty has particular application here. *See United States v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir. 1947), *rehearing denied,* 160 F.2d 482; Prosser & Keeton, § 32 at 173. That method of analysis requires a balancing of the importance of the societal interest and the probability and burden of potential injury to a plaintiff against the burden placed on a defendant if he were required to take precautions to prevent injury. Employing this approach here, it is clear that a duty was owed by the defendant to the plaintiffs. It cannot be said that the burden placed on the defendant in this case outweighed the burden the defendant placed on the driving public by permitting its employees to consume intoxicants at its warehouse. The defendant's conduct, acting

---

**2.** *See Dickinson,* 716 P.2d at 819; *Kelly,* 476 A.2d at 1224 (guest must be visibly intoxicated before social host held liable for torts committed by guest).

**3.** Mooney's *failure* to act, i.e., his failure to prevent the drinking in his office, could have been found to be negligent by the jury. The majority's suggestion to the contrary, slip op. at 9 n. 2, is incorrect. *See Restatement (Second) of Torts,* § 284(b). Moreover, the supposed distinction between an act and omission is a difficult one to make: "In theory the difference between the two is fairly clear; but in practice it is not always easy to draw the line and say whether conduct is active or passive." Prosser & Keeton, § 56 at 374 (footnote omitted).

through its supervisor, was irresponsible. It was unnecessarily risky for this employer to have allowed employees, particularly Grantham, to consume intoxicating liquor at an impromptu party on its premises at the end of a work day, knowing they would soon drive off in their own motor vehicles. In finding the defendant in violation of a legal duty, the jury reasonably concluded that the burden of this risk should be borne by the Defendant, not the public. That common sense judgment should not be disturbed on appeal.

I would affirm the judgment of the Superior Court.