Michael L. SPILLER, Plaintiff–
Appellant,

v.

Lawrence O. BRADY, Jr. and Roy Wid-
ener Motor Lines, Incorporated,
Defendants–Appellees.

No. 98–1223.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1998.

Decided March 1, 1999.

John P. Womick, Stephen C. Williams, Womick & Associates, Carbondale, IL, for Plaintiff–Appellant.

Bruce L. Carmen, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, Terese A. Drew, Hinshaw & Culbertson, St. Louis, MO, for Defendant–Appellee.

Before COFFEY, FLAUM and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

This personal injury, diversity suit is the result of an accident that occurred in the

State of Kentucky in October of 1994. Plaintiff Michael L. Spiller ("Spiller"), a truck driver, was standing in the parking lot of a rest stop working on his truck when another truck, driven by defendant Lawrence O. Brady ("Brady"), ran over his foot, fracturing it. Spiller filed suit against the defendants-appellants Brady and his employer, Roy Widener Motor Lines, Inc. ("Widener"). The case was tried, and the jury rendered a verdict in favor of the defendants. We affirm.

## I. BACKGROUND

In the early morning of October 17, 1994, Mike Spiller, an employee of Heavy Duty Trux, was transporting a truckload of empty wood pallets with his driving partner, Carl Lester ("Lester"), from Asbestos, Canada, to Smithfield, Tennessee. Around 7:00 a.m. that morning, Spiller pulled the semitrailer off the highway into a rest stop area on Interstate 65 near Bowling Green, Kentucky. Spiller backed his truck into a parking space immediately to the right of a semitrailer owned by defendant Widener and operated by defendant Brady, approximately three to three and one half feet from Spiller's truck. Although Brady was not in his truck at the time Spiller and Lester arrived and pulled their truck into the rest area, he left his engine running.

Spiller and Lester left their truck for about ten or fifteen minutes after arriving at the rest stop. Upon their return, Spiller and Lester observed that a strip of metal about a foot wide running from the bottom of the back of the semitrailer's cab to the top on the driver's side of their truck, known as a faring, was bent. Initially, Lester attempted to bend the faring back into position by hand, but was unable to achieve the desired result. He summoned Spiller and they jointly proceeded to work together to bend the faring back into its proper position. Lester climbed onto a small walkway between the cab and the trailer, and pushed on the faring. Spiller, the taller of the two at six feet four inches, stood on the ground near Lester, and positioned himself with his left foot against the truck and his right foot behind him on the ground. Spiller grasped the faring and attempted to leverage himself by pushing off with his left foot to gain greater force, seeking to bend the faring by pulling it toward him.

During this bending procedure, Brady returned, approaching his truck from the driver's side, and mounted the cab into the driver's seat. Because Brady entered his cab from the driver's side, he failed to notice Spiller or Lester, who were positioned between the two trucks on Brady's passenger side, according to the testimony at trial. Brady planned to exit his spot by moving forward and turning to the left. However, because there was a truck on Brady's left, and Brady was concerned that he would collide with the truck to his left if he proceeded forward and turned left, he decided to veer slightly to the right as he exited from his parking place before turning to the left. As he began to move forward, Brady glanced out the passenger window and into the passenger mirror in order that he would avoid Spiller's truck to his right. He claimed that he never saw Spiller or Lester. As Brady's truck moved forward, the right front tire of his trailer ran over Spiller's right foot, causing a severe fracturing of the instep of his foot as well as his ankle.

On October 17, 1995, Spiller filed suit in Illinois state court, alleging that Brady had operated his vehicle in a negligent manner, thus causing Spiller's injury. On November 9, 1995, the defendants removed the action to the United States District Court for the Southern District of Illinois. Before trial, the court granted the defendants' motion to exclude the testimony of the plaintiff's expert medical witness and his medical report because the report was not timely filed pursuant to the court's pre-trial order. The parties proceeded to trial, and during the jury instruction conference, the defendants requested a contributory negligence instruction. The plaintiff objected to the instruction, contending that the record was barren of any evidence establishing that Spiller was negligent. The judge overruled Spiller's objection and instructed the jury on contributory negligence.[1] The jury returned a verdict in favor of the defendants.

---

1. The court instructed the jury that "[i]t was the duty of the plaintiff, before and at the time of the occurrence, to use ordinary care for his own

## II. ISSUES

On appeal, Spiller requests a new trial on the grounds that the district court abused its discretion in ruling that the record contained sufficient evidence to justify an instruction on contributory negligence. Spiller also argues that the trial judge committed error in refusing to allow Spiller's expert medical witness to testify.

## III. ANALYSIS

### A. Jury Instruction.

■■■ *Standard of Review.* We review the district court's decision concerning jury instructions under the abuse of discretion standard. *See Stuart Park Assoc. Ltd. Partnership v. Ameritech Pension Trust*, 51 F.3d 1319, 1323 (7th Cir.1995) ("The crafting of jury instructions is largely a matter within the district court's discretion."). On a motion for a new trial based on improper instructions to the jury, "we ask whether the instructions, when considered in their entirety and not in isolation, were sufficient to inform the jury of the applicable law." *De-Paepe v. General Motors Corp.*, 33 F.3d 737, 743 (7th Cir.1994), citing *Patel v. Gayes*, 984 F.2d 214, 218–19 (7th Cir.1993).

■■■ *Discussion.* The parties agree that Kentucky law governs the underlying action, including our analysis of the judge's jury instruction decision. In Kentucky, "a party is entitled to a jury instruction in every duty supported by the facts entered into by the evidence, whether that duty is a common law duty or a statutory duty." *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky.1995); *see also Hayes v. Commonwealth of Kentucky*, 870 S.W.2d 786, 788 (Ky.1993) ("The jury instructions must be complete and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions.") (citations omitted). Thus, if the record contains any evidence suggesting that Spiller might have been negligent, the judge

acted within his discretion when he issued the contributory negligence instruction. *See Skaggs v. Assad*, 712 S.W.2d 947, 948 (Ky. 1986) (contributory negligence instruction deemed to be proper since the record contained evidence of plaintiff's negligence).

Spiller concedes that he failed to maintain a lookout behind him during the time frame when his right foot was extended outward and backward, toward Brady's truck. We are confident that had Spiller maintained a proper lookout, he would have seen Brady's truck veering toward him and would have been able to move out of the path of the truck. From our review, we are convinced that there is sufficient evidence in the record for the jury to conclude that a reasonable person should have maintained a lookout, particularly when taking into consideration that Brady's engine was running at the time and it was the time of day (early morning) when trucks were moving in and out of the parking area to get back onto the highway to continue their trip.

In response, Spiller contends that the defendants failed to offer any *affirmative* evidence of contributory negligence and furthermore that the testimony at trial established that Spiller never stepped over the painted line separating his parking spot from Brady's parking spot. He relies solely on his own testimony and the testimony of Lester (his driving partner), both of whom stated that Spiller's foot never crossed the painted dividing line.[2] We find several problems with Spiller's argument. Initially, Spiller seeks to limit the issue of contributory negligence to the question "Did Spiller step over the white line?" Spiller does not take into account the possibility that the jury might have found that, even assuming that Spiller *stayed in his lane*, he nonetheless acted negligently by failing to act in the manner of a reasonable person and keep a proper lookout and get out of the way of the moving semitrailer. Spiller apparently would have us adopt a

safety...." The court then defined the term ordinary care as "such care as the jury would expect an ordinarily prudent person to exercise under similar circumstances."

**2.** Spiller testified as follows:
Q. You know you were standing within the white line?

A. Yes.
Lester testified similarly:
Q. Was Mike within the parking space, within the white lines of where you parked your truck, when he was working on the faring?
A. Yes, sir, I believe so.

rule, in circumstances similar to those at issue in this case, somehow exempting from negligence those persons who are standing in a designated marked parking space immediately adjacent to their vehicle and in effect shifting the burden of responsibility to another party (the defendant in this case). However, Spiller does not point to any Kentucky statute or case law in support of a *per se* rule of this type, and we refuse to create and promulgate a negligence rule of this nature.

■ Another problem with Spiller's argument is that, despite the testimony of Spiller and Lester to the contrary, circumstantial evidence at trial in all probability caused the jury to conclude that Spiller's foot was protruding into Brady's parking space. This Court has repeatedly stressed that a jury is entitled to rely upon circumstantial evidence in reaching its conclusions. *See United States v. Diaz*, 876 F.2d 1344, 1352 (7th Cir.1989) ("Circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable.") (quoting *United States v. Williams*, 858 F.2d 1218, 1221 (7th Cir.1988)) (dissenting opinion) (quoting *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir.1974)). According to the record, Spiller's truck was approximately three to three and one half feet from the painted line, and Spiller is six foot four inches tall. Considering the proximity of Spiller's truck to the line, and taking into account Spiller's height (6′4″), the jurors in all probability applied their common sense, knowledge and experience in the affairs of life and concluded that Spiller's foot likely did protrude over the line. *See United States v. Alvarez*, 860 F.2d 801, 832 (7th Cir.1988) ("Juries are allowed to draw upon their own experience in life as well as their common sense in reaching their verdict.") (quoting *United States v. Radtke*, 799 F.2d 298, 302 (7th Cir.1986)). Of course, to reach such a conclusion the jury would have to reject Spiller and Lester's testimony, but juries have the duty to determine the credibility of witnesses. *See Diaz*, 876 F.2d at 1353 ("[T]he credibility of witnesses is peculiarly within the province of the jury and our

review of credibility is prohibited absent extraordinary circumstances.") (quoting *United States v. Noble*, 754 F.2d 1324, 1332 (7th Cir.1985)). Thus, the jurors had the discretion to disregard the testimony of Spiller and Lester and draw their own conclusions based on the evidence adduced at trial.

■ *Prejudice.* Even if Spiller was correct in his assertion that the record lacked evidence supporting a contributory negligence instruction, a new trial is not warranted unless Spiller has demonstrated that the inclusion of this instruction was prejudicial. *See Smith v. Chesapeake & Ohio Ry. Co.*, 778 F.2d 384, 389 (7th Cir.1985) ("Unless an erroneous jury instruction affects the substantial rights of the parties, a new trial is not required.") (citations omitted). As we explained in *McCarty v. Pheasant Run, Inc.*, 826 F.2d 1554, 1559 (7th Cir.1987), where (as here) a jury returns a general verdict[3] for the defendant, an instruction on contributory negligence is harmless, even if erroneously given.

In *McCarty*, a hotel guest was assaulted in her room and filed a negligence suit against the hotel, alleging that the hotel's management failed to take proper precautions to prevent the assault. The jury rendered a general verdict for the defendant, and the plaintiff appealed, arguing that there was no evidence of the plaintiff's negligence and that the trial judge erred when he instructed the jury on contributory negligence. We held that even if there was no evidence of contributory negligence, the fact that the jury returned a general verdict for the defendant demonstrated that the disputed instruction had no bearing on the outcome:

> even if there was no evidence of contributory negligence, there was no prejudicial error in giving an instruction on it. The jury was clearly and correctly instructed that contributory negligence in Illinois is not a complete defense; it just cuts down the amount of damages that the plaintiff would otherwise be entitled to. This is the principle of comparative negligence, and at the time of the trial of this case it existed in Illinois in its pure form,[4] meaning that

---

3. The plaintiff objected to the trial court's submitting a general verdict to the jury, but because the plaintiff has not raised this on appeal, we need not deal with it.

4. As we noted in *McCarty*, the rule has since been modified. *See* Ill.Rev.Stat. ch. 110, ¶¶ 2–1107.1, 2–1116; *Davis v. United States*, 824 F.2d 549, 551 (7th Cir.1987).

the plaintiff is entitled to some damages even if he was more negligent than the defendant.

*Id.*, citing *Alvis v. Ribar*, 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886, 897–98 (1981).

■ *McCarty* is directly applicable to the case before us. Just as *McCarty* involved a pure comparative negligence statute, so does the case before us, *see* Ky.Rev.Stat. Ann. § 411.182 (1992 & 1997 Supp.). Furthermore, in the instant case as in *McCarty*, the jurors returned a general verdict in favor of the defendants. If the jury had concluded that Brady and Spiller were both at fault, it would have apportioned a percentage of negligence to both, and thus would have awarded some amount of damages to Spiller, to be reduced by the percentage of Spiller's negligence. The jury did not apportion negligence between the two but instead rendered a *general* verdict for the defendants, finding that Brady was not negligent. Applying *McCarty*, the instruction on contributory negligence did not make any difference to the outcome.

**B. Medical Expert.**

Spiller also argues that, if we grant him a retrial, his expert medical witness should be permitted to testify. However, since we deny Spiller's request for a new trial because Spiller failed to demonstrate that the trial court abused its discretion in ruling that the record contained sufficient evidence to justify an instruction on contributory negligence, Spiller's argument is moot.

## CONCLUSION

Spiller failed to meet the burden of demonstrating that the trial judge abused his discretion in instructing the jury on contributory negligence. Even were we to hold that the trial judge had committed error, which we do not, the error would have been harmless, for the jury instruction did not prejudice Spiller.

AFFIRMED.