Richard SCHILHAVY, Plaintiff–
Appellant,

v.

BOARD OF GOVERNORS OF STATE
COLLEGES AND UNIVERSITIES, a
body corporate and politic, and Board
of Trustees of Eastern Illinois Univer-
sity, a body corporate and politic, as
the successor in interest to the Board
of Governors of State Colleges and
Universities, Defendants–Appellees.

No. 00–1899.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 2001.

Decided April 24, 2001.

Rehearing Denied Sept. 14, 2001.

Before Hon. FRANK H.
EASTERBROOK, Hon. TERENCE T.
EVANS, and Hon. ANN CLAIRE
WILLIAMS, Circuit Judges.

## ORDER

Richard Schilhavy was employed as an associate professor of information systems in the College of Business at Eastern Illinois University from 1987 until 1992. His wife Mary was also employed by the University, on a temporary basis, as an accounting instructor between August 1988 and May 1989. When Mary's 9–month contract expired at the conclusion of the 1988–89 school year, she applied for another temporary position the following year. The University did not offer her a contract.

With the assistance of her husband, Mary filed a charge of gender discrimination with the Illinois Department of Human Rights, alleging that the University passed her over for the temporary accounting instructor position because she is a woman. Richard also filed a grievance with the University on his wife's behalf. In July 1991, Mary settled her claim against the University for $11,000.

In this wholly separate Title VII action, Richard Schilhavy alleges that the University retaliated against him for his role in prosecuting his wife's charges. Specifically, he contends that the University failed to provide him with an adequate office, effectively destroying his chance to perform research, which in turn precluded him from obtaining suitable employment elsewhere. A jury ruled in favor of the University, and the district court denied Schilhavy's motion for a new trial. Schilhavy appeals, citing as error two evidentiary rulings by the district court, as well as flawed instructions to the jury on the burden of proof. We review these issues only for an abuse of discretion. *Old Republic Ins. Co. v. Employers Reinsurance Corp.*, 144 F.3d 1077, 1082 (7th Cir.1998) (evidentiary rulings); *Spiller v. Brady*, 169 F.3d 1064, 1066 (7th Cir.1999) (jury instructions).

Schilhavy's conflict with the University hierarchy began shortly after his wife's did. In April 1990, Schilhavy was told that he would not be retained on the faculty after May 1991. This decision resulted from a recommendation made by Theodore Ivarie, dean of the College of Business, who said Schilhavy failed to produce the level of research expected of faculty members. In fact, the record shows that Schilhavy failed to publish a single article in a peer review journal during his 5 years at the University. Nevertheless, Schilhavy and his union filed a grievance challenging his termination. On August 26, 1991, Schilhavy and the University reached a settlement pursuant to which Schilhavy would remain a faculty member through the summer of 1992. The University also agreed to provide Schilhavy with an office and treat him in all respects as a full member of the faculty. This was important to Schilhavy because he was not scheduled to teach during the fall 1991 semester and planned to devote that time to research in order to improve his chances of securing employment at another school. The location of the office to which Schilhavy would be assigned was not addressed in the settlement negotiations.

Meanwhile, in accordance with its initial plan to get rid of Schilhavy by May 1991, the University expelled him from his office

in Lumpkin Hall, a new classroom and office facility that housed the College of Business faculty. When execution of the settlement agreement was complete, the University assigned Schilhavy an office in the library. Schilhavy first visited the office on September 16, 1991, and reports that it was dark and dusty, with only broken tile covering the floor and walls. The office's Spartan furnishings consisted of an old desk, an old wood filing cabinet, and an old desk chair, but it had neither a telephone nor a computer. Schilhavy refused to occupy the office. The University promised to make improvements and by late October had moved Schilhavy's computer and telephone to the new office and retiled the floor. Because there were only 6 weeks left in the fall semester at that point, however, and because he would be moving back to Lumpkin Hall for the spring semester, Schilhavy never occupied the library office. The University kept its promise to restore Schilhavy to Lumpkin Hall in December 1991, but he filed this lawsuit anyway, alleging that his 4–month exile to the library was a punishment for his role in supporting his wife's discrimination charge and that the University's actions prevented him from completing the research necessary to make himself competitive in the higher education job market.

The key issue at trial was whether the University's articulated reason for assigning Schilhavy to the library office was a pretext. Both Yunus Kathawala, chairman of Schilhavy's department, and Dean Ivarie testified that Schilhavy was an animated and gregarious individual whose level of conversation disturbed other faculty members. Dean Ivarie testified that he requested that Schilhavy be placed in the library to shield the Lumpkin Hall faculty from Schilhavy's disruptive influence, not to retaliate against him. Schilhavy, in turn, attempted to rebut the dean's innocent explanation in several ways, among them by pointing out that neither Dean Ivarie nor Dr. Kathawala had ever counseled him on modifying his behavior in Lumpkin Hall. In addition, Schilhavy noted that Dean Ivarie's Lumpkin Hall office was not close to his, and the dean, therefore, was not in a position to observe first-hand any alleged disruptive conduct.

Schilhavy also attempted to introduce a letter written by Michael Provines, the University's representative during the second stage of Schilhavy's grievance proceedings, to discredit Dean Ivarie's explanation for the alleged banishment to the library. The January 30, 1992, letter to Cynthia Nichols, the University officer who had initially handled Schilhavy's grievance, stated in part: "While I never fully appreciated or understood why the Chair and Dean felt it was so important and necessary to remove Schilhavy from Lumpkin Hall, nevertheless, you were able to achieve that objective when Schilhavy's room was moved to the library in the Fall." Schilhavy contended that if his boisterous nature had been the actual reason Dean Ivarie had him assigned to the library, Mr. Provines would have been informed of this reason during the grievance process. The district court disagreed, however, and refused to admit the letter because Mr. Provines' opinion about the reason for Schilhavy's office assignment was irrelevant to a determination of the University's actual reason. In addition, the district court noted that Schilhavy failed to establish that Provines had completed an investigation of the reason for Schilhavy's office assignment, a necessary foundation for the admission of his opinion on the matter.

█ It is true, as Schilhavy suggests, that evidence casting doubt on an employer's proffered reason for a challenged job

action permits a jury to infer that the employer is attempting to conceal a discriminatory motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). But we are not convinced that Provines' letter sheds any light on the veracity of Dean Ivarie's testimony concerning his motive for requesting that Schilhavy be assigned an office outside Lumpkin Hall. Schilhavy did not elicit testimony from Provines concerning the extent to which he investigated the University's reason for assigning Schilhavy the library office. Indeed, Schilhavy's grievance had not yet progressed to "step 2," the portion of the grievance proceeding for which Provines was responsible. Without a foundation establishing Provines' knowledge of the office assignment, the letter has little evidentiary value: Provines' failure to "understand" the University's reason for relocating Schilhavy's office to the library could very plausibly stem from an incomplete investigation rather than any disagreement with the University's action. And even if the letter could be read to express Provines' disagreement with the University's treatment of Schilhavy, it in no way implies that the proffered reason for the office assignment was a pretext to cover up the real motive—retaliation. Accordingly, we find no abuse of discretion in the district court's exclusion of the Provines letter.

■ Schilhavy also complains that the court excluded certain notes taken by Rhonda Chasteen, the University's equal opportunity officer in 1990, during her investigation of Mary Schilhavy's discrimination claim. The notes reflect an August 20, 1990, conversation between Chasteen and Dean Ivarie in which they discussed ways for the University to deal with the charges. According to Chasteen's notes, one of Dean Ivarie's suggestions was that the University inform Mary Schilhavy that if she pursued her complaint further, the University would be forced to document the deficiencies in her performance, and that this could negatively affect her chances of obtaining employment at another school. Schilhavy wished to introduce the notes on the theory that they evinced the dean's desire to make a veiled threat to Mary and therefore were probative of his hostility toward both Schilhavys. The district court held that the notes were irrelevant and ended Chasteen's testimony on the subject.

We agree with the district court. First, Dean Ivarie's strategy session with Chasteen occurred in August 1990, more than one year prior to Schilhavy's assignment to the library office. Second, the topic of Chasteen's discussion with Dean Ivarie was Mary Schilhavy, not Richard. Finally, even if the notes had something to do with Richard Schilhavy and were contemporaneous with the decision to exile him to the library, they still do not reflect animus on the part of Dean Ivarie. As the district court stated, when a prospective employee files a discrimination claim complaining of not being hired, the employer "may be forced to say bad things about you. Why [it] didn't hire you, [it] didn't hire you because A, B, C, D, none of which are very nice and you don't want to have on the record." The fact that Dean Ivarie would caution Mary Schilhavy that pursuit of her complaint would force the University to put her faults on the record—and that such a record could hurt her down the road—thus does not indicate animus, but rather an attempt to resolve the discrimination charge without unduly damaging her prospects for future employment elsewhere. The district court did not err in excluding Chasteen's notes.

Schilhavy finally complains that the district court improperly instructed the jury. Schilhavy proposed that the court instruct

the jury that it was his burden to prove five things: (1) he had assisted his wife in pursuing her discrimination charge; (2) he was assigned to an office unsuitable for academic research; (3) his assistance to his wife in pursuing her discrimination charge was a "substantial factor" in the University's decision to assign him the library office; (4) he was damaged; and (5) the University's conduct was the proximate cause of his damage. The district court's actual instruction largely incorporated Schilhavy's proposal but added that Schilhavy bore the burden of proving that the University retaliated against him for assisting in prosecuting his wife's discrimination charge. Schilhavy contends that the court's separation of the concepts of substantial factor and retaliation improperly saddled him with an additional burden.[1]

Schilhavy's argument—that the district court erred by instructing, in a retaliation case, that the plaintiff bore the burden of proving retaliation—defies logic. Nonetheless, Schilhavy is correct that the district court's instructions were unnecessarily repetitive and may have run afoul of the spirit of *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir.1994), which admonishes trial courts to give simple and concise jury instructions in employment discrimination cases. Adopted for the facts of this case, the instruction we suggested in *Gehring* might read something like this: "You must decide whether the employer would have placed Schilhavy in the library office had he not assisted his wife in pursuing her discrimination claim, and everything else had remained the same." *See id.* Such an instruction, which is similar to the district court's definition of "substantial factor," necessarily incorporates the concept of re-

taliation because proof that Schilhavy's assistance to his wife was a substantial factor in his office assignment is proof of retaliation. Thus, the concepts of substantial factor and retaliation could have been collapsed into a single instruction, as Schilhavy requested.

■ But Schilhavy was "not entitled to the best possible jury instruction," just one that tells the jury "what it need[s] to know." *Gehring*, 43 F.3d at 344. The jury in this case received such instructions. Although they may have been redundant, the instructions accurately stated the law, and Schilhavy does not argue otherwise. At bottom, Schilhavy did bear the burden of proving that the University retaliated against him. He also bore the burden of proving this retaliation by demonstrating that his role in his wife's discrimination claim was a substantial factor in the University's decision to assign him the library office. The fact that both burdens could be satisfied simultaneously, by the same evidence, does not render separate instructions misleading. And we have no doubt that the jurors had encountered the term "retaliation" before and were not confused by the court's use of it.

For these reasons, the judgment of the district court is AFFIRMED.

---

1. The district court also instructed the jury that Schilhavy's assistance to his wife was not a "substantial factor" if "the University would have assigned [him] to the office in the library building if he had not assisted his wife in processing her grievance claims against the University, and everything else had remained the same." Schilhavy does not dispute that this instruction accurately states the law.